IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DIXON HEALTHCARE & )
REHABILITATION CENTER, LLC, )
et al., )
 )
        Plaintiffs, )
 )
  v. ) No. 13 C 1233
 )
NORTHBROOK BANK & TRUST )
COMPANY, et al., )
 )
        Defendants.[1] )

## MEMORANDUM OPINION AND ORDER

This memorandum order will not elaborate on the subject addressed briefly in n.1. Instead it will speak only of the AC filed on March 25, 2013, in which Morris Healthcare & Rehabilitation Center, LLC ("Morris Healthcare") and 11 individuals have sued Illinois Department of Health and Family Services Director Julie Hamos, Illinois Governor Patrick Quinn, Director of the federal Centers for Medicare & Medicaid Services Cindy Mann and Northbrook Bank & Trust Company ("Northbrook Bank"). As the AC is framed, its "First Cause of Action" seeks declaratory and injunctive relief against Director Hamos and Governor Quinn, its "Second Cause of Action" seeks injunctive

---

[1] This caption retains the original form in which this lawsuit was brought, simply because that is the manner in which the court docket is maintained. Plaintiffs' Amended Complaint ("AC"), which is the subject of this memorandum opinion and order, is a reincarnation necessitated by various problematic actions that have been taken by plaintiffs' counsel in pursuing this litigation.

relief against Director Mann and its "Third Cause of Action" sues Northbrook Bank for asserted breach of contract.[2]

But on the very next day after the AC was filed (March 26), in response to a notification to plaintiffs' counsel that AC Count I would prompt action in the bankruptcy court to continue the $10,000 per day fine that had been based on a contempt order that had held the original Complaint to have violated the automatic stay provision of the Bankruptcy Code, plaintiffs' counsel filed a notice of dismissal of what he characterized as a "portion of Count I of the Amended Complaint as described by the attached Trustee counsel's email." Although that sort of incorporation by reference is less than precise in terms of carving up AC Count I, it is sufficient for present purposes to note that both Governor Quinn and Director Hamos have moved for dismissal of Count I as such--and this opinion turns first to that subject.

As for Governor Quinn, he advances several bases for relief, and analysis of the caselaw shows that more than one is a solid and independent ground for his dismissal. But one fatal blow is enough, and for that purpose it suffices to say (1) that Governor

---

[2] "Cause of action" is an inapt term in the federal practice, in which the operative concept is rather that of a "claim" (see the excellent exposition of the distinction and its significance in NAACP v. Am. Family Mut. Ins. Co., 978 F.2d 287, 291-93 (7th Cir. 1992)). In any event, however, for purposes of convenience the claims against the different defendants will be referred to here as Counts I, II and III respectively.

Quinn is sued here solely in his official capacity, (2) that any purported liability on his part stems solely from his having signed certain 2012 legislation and (3) that in that capacity he enjoys absolute legislative immunity.

In that respect our Court of Appeals has earlier extended such absolute immunity to then Governor Rod Blagojevich on the strength of the United States Supreme Court's unanimous decision in Bogan v. Scott-Harris, 523 U.S. 44 (1998). Although Bagley v. Blagojevich, 646 F.3d 378, 391-93 (7th Cir. 2011) discussed the subject at some length in the context of that case, for purposes of this opinion it suffices to quote the succinct encapsulation of the Bogan holding taken from Bagley, id. at 391:

> Our discussion of whether legislative immunity covered the veto starts with the Supreme Court's unanimous Bogan decision. "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" 523 U.S. at 54, 118 S.Ct. 966 (quoting Tenney, 341 U.S. at 376, 71 S.Ct. 783). Whether an action is legislative "turns on the nature of the act, rather than on the motive or intent of the official performing it." Id. Legislative acts include signing and vetoing bills because they are "integral steps in the legislative process." Id. at 55, 118 S.Ct. 966 (citing Edwards v. United States, 286 U.S. 482, 490, 52 S.Ct. 627, 76 L.Ed. 1239 (1932); Smiley v. Holm, 285 U.S. 355, 372-73, 52 S.Ct. 397, 76 L.Ed. 795 (1932)).

Because Governor Quinn's signing of the legislation to which the AC referred was unquestionably an "integral step[ ] in the legislative process," his motion to be dismissed as a Count I defendant on legislative immunity grounds must be and is granted.

As already stated, it becomes unnecessary to delve into any other grounds that would also--on their own--lead to the same result.

Director Hamos also invokes several grounds for her dismissal. This opinion will eschew consideration of her objections challenging the standing of plaintiffs to bring this action at all, for as with Governor Quinn each of several other grounds calls for dismissal even if the existence of standing is assumed arguendo.

One obvious bar to suit against Director Hamos is that, with the bobtailing of AC Count I through the excision of a portion of that count by the March 26 voluntary dismissal, what remains is that plaintiffs seek to enforce through the Constitution's Supremacy Clause what used to be the Boren Amendment to the Medicaid Act, 42 U.S.C. §1396a(a)(30)(A). But that makes no sense at all, for the Boren Amendment was expressly repealed by the Balanced Budget Act of 1997, which instead promulgated a substitute standard in 42 U.S.C. §1396a(a)(13)(A)--an entirely different standard of conduct for the Medicaid agency. That renders plaintiffs' Boren-Amendment-based contentions totally without foundation and hence dismissible.

And there is more. For example, as already stated, plaintiffs' counsel has sought to predicate that claim as somehow based on the Constitution's Supremacy Clause (U.S. Const. art. VI, cl. 2). In this Court's opinion that view of the

4

Supremacy Clause as itself a source of federal rights is wrong, grounded as it is on a misreading of Douglas v. Independent Living Ctr., 132 S.Ct. 1204 (2012). That is also the perspective voiced by the panel in our Court of Appeals that looked at the question in Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health, 699 F.3d 962, 982-83 (7th Cir. 2012), although the court there was not required to decide the issue to resolve the case before it.[3]

Finally, Director Hamos calls on the immunity that the Eleventh Amendment would provide if plaintiffs were to call upon 42 U.S.C. §1983 as the basis for their claim. In that event Count I would amount to a claim for monetary relief against the State of Illinois, bringing the bar of the Eleventh Amendment directly into play.

In summary, there are a series of bases supporting Director Hamos' dismissal from Count I, while of course only one road to that destination is needed. With both Governor Quinn and Director Hamos thus out of the case, Count I does not survive, and it is dismissed in its entirety.

This opinions jumps then to AC Count III, that advanced against Northbrook Bank. Once again plaintiffs' counsel misreads or misapplies the relevant authority, this time the supplemental

---

[3] In a sense this brief discussion in the text may be considered a digression, because here too a resolution of the issue is unnecessary to the outcome.

jurisdiction of the federal courts as enunciated in 28 U.S.C. §1367(a). To come within that statute a plaintiff must assert a claim that is "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Plaintiffs flunk that test because AC Count III asserts two purely state law causes of action[4]--one a straight-out breach of contract contention (as had also been asserted in Count II of the original Complaint) and the other a declaratory judgment contention. Neither of those causes of action has the necessary relation to the federal claims in this case. Hence Northbrook Bank is also dismissed as a defendant.

That carving up of the AC leaves only its newly asserted Count II against Director Mann, who has not yet appeared in the case and hence has had no opportunity to present her own dismissal motion. But AC ¶46, which identifies the relief that plaintiffs seek against Director Mann, also speaks only in terms of a declaratory judgment and injunction as to claimed violations of the Boren Amendment. What was fatal to that basis for suit under Count I is equally fatal as to Count II. No useful purpose would be served by requiring the same issue to be tendered by Director Mann, and this Court dismisses Count II sua sponte.

---

[4] This time "cause of action" is the right term, for that is the operative concept under Illinois law.

<u>Conclusion</u>

For the reasons spelled out at length in this opinion, none of the claims in the AC survives analysis. Plaintiffs' counsel has had and has exercised ample opportunity to reshape his efforts to obtain relief, waging his battle in several courts. This Court sees no basis for allowing another do-over. All of the AC's claims, and this action as well, are dismissed.

                                                                  */s/ Milton I. Shadur*
                                        Milton I. Shadur
                                        Senior United States District Judge

Date:  April 25, 2013